No. 08-1384, EZ Gard Industries, Inc. against the XO Athletic Company. Mr. Chin. Thank you, Your Honor. Good morning. May it please the Court. This is an appeal of a preliminary injunction that was entered in based on patent infringement, and we believe that it should be reversed based on two things. One is this incorrect claim construction, and second is the scope of the preliminary injunction was overly broad. Before you get started, can you tell us what the status of the litigation is at the moment? The status of the litigation is both parties agreed to stay the case until this appeal is resolved. I see. Thank you. So with regard to the claim construction issue, I'd like to talk about that first. We believe that the decision that this Court has made in Phillips should govern this case, and the District Court failed to do so. Namely, it failed to construe the claims in light of the specification to understand what one of ordinary skill in the art would understand the invention to be at the time of the invention. I just want to take a step back and just talk very briefly about the subject matter of the patent, and the patent is very easy to understand. The patent involves mouthguards. It's athletic mouthguards, and it's the U-shaped pieces of plastic that you place into your mouth to be able to protect you when you're doing athletic competition. And in particular, one of the values of having these mouthguards is to be able to customize it, and the typical way of doing that is you boil it, and it's made of a softer Now that we actually understand how the product works, let's just get to the key terms that are what you have at issue. Embedded. What's wrong with the District Court's construction? The District Court adopted a construction that is overly broad. It started off with what it understood to mean the plain and ordinary meaning, and then it checked the specification to see if that was okay. And that has fallen in line with regard to the Texas digital line of reasoning, and we believe that that is incorrect, and it does not comply with the teaching of the specification. You don't think it should be given its plain and ordinary meaning? No, the plain and ordinary meaning in light of the specification. With regard to the specification, the specification makes it clear that the framework must be internal to the posterior portions of the mouthguard. No, because the anterior framework is not internal. You're right, Your Honor, but the claim language specifically Internal is not really a plain and ordinary meaning for embedded. I mean, it just isn't. So what you're really asking for, it seems to me, is a meaning outside of a plain and ordinary meaning, which would almost amount to a disavowal of the plain and ordinary meaning. I don't believe that's correct, Your Honor, because the plain and ordinary meaning comes in many different ways. It talks about embedded as being, the United States Court talked about, there's a United States Court case where it talked about some of the definitions that could be used, and one of them was that it's firmly embedded or it's surrounded by, and that is also sort of a way of describing internal. So there's many different ways of understanding what embedded means, and we understand that Would you introduce evidence, like, by the way, of expert testimony that would suggest that embedded in this particular art, it has a unique definition, which would only mean completely internal, basically? No, Your Honor, we did not submit any external evidence, extrinsic evidence such as expert witness. We believe that the specification, again, as taught by the specification, in all of its description and to be able to achieve the advantages of the invention The specification describes, for example, embedded or substantially internal framework. Well, the use of the word or, if it said embedded, parentheses, substantially internal framework, then I would say that was definitional, but when it says embedded or substantially internal, it would suggest to me that those are alternatives. I think it could mean just that it was using the same word to describe the same thing. You could use this, so you could say it was embedded or substantially internal to just clarify what you meant by embedded or substantially internal. Again, I believe this is echoed throughout the entire Well, I can see how you can make that argument. You know, I can see that. And if sort of everything else in the specification supported your definition of embedded, then, you know, maybe, you know, we could understand that that's how they meant or in this case. But I mean the normal definition of or, it seems to me, wouldn't encompass what you're suggesting. You know, oh, anybody can help me, you know, Mr. Chen or Mr. Smith. You know, I'm not suggesting that they're the same exact person, but rather they could both assist me in this process. And so I understand your argument or your position, Your Honor, but I think it can be interpreted to be one of alternatives or can mean just meaning the same thing. And I think, again, if you look at everything in the specification, everything in the specification teaches you that it has to be internal. Well, no, because when they talk about, they talk about embedded with reference to the anterior frame part as well, and that's not internal. Well, let me turn to that, let me turn to that section, Your Honor, because the claim language specifically talks about the embedded relationship is only in the posterior portion. In the specification, there's a section where it talks about that the anterior portion is further embedded. And if you look at that section, it's only talking about the cushion pads. The cushion pads are embedded. They go inside the mouth guard. Show me where you say it is it talks about further embedded. So I know where we are, where in the patent you are. Because I have to say it seems to me further embedded means more than just what's done in the anterior portion. And when they claimed it and used the word embedded in contrast to further embedded, it would suggest to me less. In column 5, lines 42 through 48, it's talking about how the anterior cushion pads, 92, go through the softer EVA materials, and therefore it is embedded in the mouth guard portion, and that's the reason why it talks about. This is the preferred embodiment. But wouldn't you think then, I mean, doesn't it seem to make sense if you say in the claim, though, something is embedded that it would have the normal embedded meaning as opposed to in this particular preferred embodiment when we talk about something being further embedded. I mean, that obviously means more than just the standard amount of embedding. It means further embedded because the framework and hole in the posterior section is embedded, and there's a section of the anterior portion that's not embedded, it's external, but the anterior cushion pads are further embedded. So consequently, it's a consistent definition of embed in that the embed must be internal. Again, the claim language specifically only refers to the posterior section, so the extent that this language regards the anterior portion, and we'll freely admit, the patent just shows part of the anterior portion as not being inside or embedded in the mouth guard portion. But in this section, when it uses the word further embed, it's talking about the anterior cushion pads, which are embed, which are go through the mouth guard portion to touch the teeth, so it's completely surrounded. And thus, being completely surrounded, it's internal to the mouth guard. I'd like to shift gears to the enlarged issue. Certainly, Your Honor. And my first question to you is, of course, we're talking about the claim language that says, each posterior portion, each with enlarged portions in an area of a molar tooth, etc. And my question is, what is it that is enlarged? Is the thickness enlarged? Is the surface area enlarged? What is it that's enlarged? It says enlarged portions. What does that mean? We believe enlarged portions require thickness, increased thickness. And you say that because why? Let me just make it one last thing. To make it explicitly clear, thickness means greater in volume. I think there's a lot of words being used here. Thickness means what? Greater in volume. So it wouldn't just have to be thickness, for example, an enlarged portion. Couldn't it be a squiggly line also being an enlarged portion because there would be greater volume to that portion of the posterior cushion pad? To the extent that it's a uniform squiggly line, no, Your Honor. Right, because then it wouldn't be more volume in just the posterior cushion pad. It would be uniform volume throughout. So there wouldn't be larger volume in one or the other. Right, it would just be a displacement of the shape. I think the example we used in our replies would be— So if it looked like this, sorry, here's my picture, this section you would agree could be argued to have larger volume than this section. No, Your Honor, we would not say that it has larger volume simply because when you put that in water, it does not displace any more water if I just stretch the thing out. There's no more material there, and that's what it means. What do you mean there's no more material there? It takes more material to make this squiggly that goes up and down than it does the straight line. If I just stretched it out, it would not. It would be the same exact thickness going through. If you stretched it out, it would be longer. Okay, well— So that's more volume. Well, what we mean by volume is thickness then. I mean, if you have a uniform thing that you are baking to a shape— So again, you think enlarged means thickness. Thickness, yes. Again, I feel like we're— If you envision a flat sheet of steel and a die stamp comes down and stamps out a semispherical bump in this sheet of steel, if you look at that area, it has the same thickness. The steel has the same thickness throughout. Okay. So you would say that there's nothing enlarged. Right. If it has the same thickness, makes up the same volume, divide the material at that section— But that portion, that semispherical portion, has a larger surface area. Yes, sir. It's been stretched by the die. It would have a larger surface area. Why doesn't enlarged mean surface area? So that if something is stamped so that it is no longer planar, and in the context of this invention, you have the mouthpiece with two stamped portions, thickness the same throughout, but nonetheless, the two stamped portions have enlarged surface areas. Are they not enlarged? It may be enlarged surface area, but your Honor, I think the thickness is a requirement because the claim language basically states that the purpose of these enlarged areas is to absorb attenuant and dissipate the shock forces. And I think when you have more material there, despite whatever the shape, and if you change the shape, you may argue that it has more volume. If it's not thicker in volume— No, those squiggly limes will help with that exact process, right? Because it's going to give a larger, firmer— when you bite down, you're not— you know, you have a large— it has the same effect functionally as thicker. If you have a thicker— you may be correct, Your Honor, but if you have a thicker, more material in the cross-sectional area, there's not a doubt that that's going to absorb shock much better. The patent never talks about that instance, and it may be, in fact, a situation where if you have just the squiggly lime, the thing can collapse. So it's obvious if you have just more mass of material, a thicker in the cross-sectional dimension, that you will be able to better absorb shock. And that is the purpose of having these enlarged sections. In the patent column 5, lines 5 to 7, it says, the enlarged portions may take the form of spheres, columns, or knobs. Yes, Your Honor. And all those embodiments all show that it has to be thicker. Spheres, if you look at the figures, they're all more volume. They're big humps, both on top and on bottom. You can just imagine it being columns, whether it be a cylindrical thing, or knobs, however you want to envision the knobs. They all take up more matter. But I guess I have two questions. One, it doesn't say, again, whether those spheres, columns, or knobs are solid or hollow. Does it make a difference? You're right, Your Honor. It does not say that. But again, I think we could all understand that if you have more material in there, it's going to better absorb the shock. I mean, these are hypotheticals we're talking about as to what could possibly have meant. I think when you look at the drawings, and you look at the description, and you understand that the reason why you have the spherical portions is to better absorb the shock, then you understand that it has more material. If those spheres were hollowed out, again, one could imagine that when you bite into it, it may collapse. But they didn't claim thicker. They claimed enlarged portions. And enlarged portions, whether it be a donut or the squiggly line, those enlarged portions, it seems to me, all better prevent the same biting-down problem that you're describing than a single flat portion. Now, granted, the one that's simply thicker would prevent it best, but all of those other alternatives also achieve, along the same line as what you're describing, the function that is recited in this claim and in this specification for the enlargement. But my problem, let me get to it. Here's my problem with the district court's construction, is that enlarged portion, it seems to me, has to be with respect to the posterior cushion pad. And my problem is when you have a squiggly line that's absolutely squiggly along the whole side, length of the line, I'm having trouble. I'm assuming this is the posterior cushion pad, and I'm having trouble understanding how this is enlarged relative to the rest of this. Again, that's the point I think we're trying to make. But it's not a thickness problem, because I don't agree with you on your claim construction argument about thickness. You're not going to get me there. So why don't you come to where I am? And so my problem with it is enlarged portion, this, regardless of thickness, doesn't seem enlarged to me relative to this. If in hindsight it had been something like this, or something like this, then I think there's an argument that can be made that this is thicker than this. But when you have uniform bumps throughout the entire cushion pad, enlarged has to be relative to something, and that's what I'm struggling with. I think, well, maybe I'm misusing the term, where we understand thickness. I would agree that the entire back section is of uniform thickness, and that's the reason why... That's not just the back section. That's the whole pad, right? That's the whole pad, because this is the part that sticks it in your mouth and then detaches after. So this is the entire pad. Right, you're right. But again, maybe I'm mismatching terms, but I would describe that as being a uniform thickness, because you're right. There is no greater differentiation. It's a continual wave where the entire portion has the same exact thickness or enlarged section. Enlarged section, right. Stop with the thickness part. Go with the enlarged section. You're right, Your Honor. That would be our position. It's just hard to describe. We use the word thickness because I think that conveys the idea that it has to be greater in volume or has more material, but I think Your Honor is right. There are no larger portions to the back. Relative to the rest of that pad. You're right. And I see I'm out of time, Your Honor. You are. We'll save you some rebuttal time. Let's hear from the other side. Thank you. Mr. Roberts. Good morning, Your Honor. May it please the Court. Could you start with the enlarged? I'm assuming that's where you're going to start, but would you mind? Is that okay? I'm happy to do so, Your Honor. Okay. We'll jump right in there. And your question was the enlarged must be enlarged relative to something. What is the relative to? Yeah, right. And what I think the district court accurately caught onto there is the enlarged The issue, it is enlarged relative to the court uses the term linear plane, which is another way of describing the occlusal plane, which is the flat surface where the teeth normally would meet the mouth guard. But the claim says posterior cushion pad in each posterior portion, each with enlarged portions in an area of the molar tooth. Right. That means that the area of the molar tooth has to have an enlarged portion relative to the rest of the posterior cushion pad. Right. Okay. And the cushion pad is the portion of the framework that lies along the molar and bicuspids in the back of the upper jaw. Right. Why can't enlarged then mean enlarged in terms of surface area? I believe it could mean that. In my mind, the court was correct in perceiving that the issue is enlarged relative to the occlusal plane where the teeth make contact with that cushion pad because the point of this limitation and the point of these protrusions or enlarged portions is to lock the jaw into the power position, as the patent describes, to give the best protection and absorption and dissipation of the shock forces. Now, where in the specification do you find some support for that interpretation, that it's just enlarged in terms of surface area or enlarged in terms of not lying in the plane of the bite? I would answer that question by first starting with the claim itself, as claim construction typically goes. You look at the claim, and as this Court is very well aware, there is a heavy presumption that claim terms are to be interpreted according to their ordinary meaning to one of skill and the art. Now, these are not particularly complicated or scientific terminology, and so I think the trial court was correct in applying a plane meaning that was apparent from the reading of the specification as supplemented, I would note, by the expert testimony that we did provide to the district court on the preliminary injunction from a Dr. Erdmann, who is a mechanical engineering professor from the University of Minnesota, who fully supports our constructions and whose qualifications as a person of ordinary skill was undisputed and remains undisputed now. And so enlarged portions simply mean portions that are larger in some way. Larger in some way. It doesn't have to be in a particular way of enlarging them, as long as they are fairly considered larger in some way. And I think the specification permits that construction because it doesn't impose any restrictions on the plane meaning of enlarged. In fact... No, but the question is larger than what? I'm sorry? But the question really is larger than what? Right. Larger than other... than would the... Larger than the... Let me put it this way. Larger relative to the linear plane of the cushion pad, which is a portion of the framework. And that's how the district court described it. A spatial enlargement from the linear plane of the framework. And what I believe the district court means by that is the flat surface. Normally it would be flat. This patent says if you put in two bulges, two protrusions that stick down further away from that center line, they will lock the molar and the bicuspid in the right position and that will give you the dissipation and absorption of shock forces that the claim calls for. Now, if you had used the word protrusions, there wouldn't be the debate that we're having, but the patent uses the word enlarged portions. Right. And the specification in providing some guidance says enlarged portions may take the form of spheres, columns, or knobs, all of which do seem to suggest some greater dimension or thickness from the rest of the structure. Well, I would disagree with the court that they suggest any greater thickness. I mean, a sphere can be hollow, and so can a column, and so can a knob. Well, I'm not talking about hollowness, but just the dimension, the vertical dimension. Right, the vertical dimension relative to the center line of that framework. I agree, and I think that's what the court is talking about. If the outer point of the area we're calling the enlarged portion is... Why are you saying relative to the center point of the framework? The claim says enlarged portion of the posterior cushion pad, and when the entire cushion pad is a consistently uniform squiggly line, I just struggle with how this is in any way enlarged relative to this other squiggle. It's enlarged relative to the horizontal plane. But I don't see the word horizontal plane anywhere in your entire patent, much less in the claim. Well, I believe it is... It's creative. I don't see it there. But I believe it's a fair construction when you look at the additional limitations of the claim. Let's start there. We've got to have enlarged portions. They've got to be in the right areas. They've got to be in the area of a molar tooth and a bicuspid tooth. Those are two discrete points at the back of the mouth. So they've got to be in the right areas, and they've got to serve the function of absorbing, attenuating, and dissipating shock forces exerted on the mouth guard during athletic activity. I don't think that they argue... I don't think EXO argues that their design doesn't dissipate shock force. I think they would probably say it does. It just doesn't do it by creating an enlargement in those particular areas. It does it by having a uniform squiggly throughout the entire area. Well, I don't think... I don't think that's a reasonable construction of this language because, look, all they did was take spheres and hollow them out and maybe make...and take the flat part and make it go up instead of down. That's not a substantial difference. And when you look at... But then argue it under the doctrine of equivalence. Well, I don't think that's necessary because I think the Court's claim construction is appropriate as is. If we are forced to go there, we obviously would. But I think it is reasonable for the Court to have said that the enlarged portion means in the specific area of the molar and bicuspid tooth there needs to be a greater spatial distance between the end point... so that it engages those molar teeth first. But there's a greater distance, but relative to what? This is a uniform squiggly. Relative to the rest of the cooking pen. Right. Suppose it was like this. There was squiggly throughout, and this was the molar portion, and there was a similar one up here in the bicuspid portion. Then you would have a good argument that this is enlarged relative to this. But when you have a uniform squiggly, and I don't mean uniform thickness, I mean uniform snake, with his humps and his lumps and everything else, it's just hard for me to say this is enlarged relative to this when they both seem equally squiggly. If you think about where that cushion pad will come in contact with the teeth, the troughs are going to contact the teeth before the peaks, even if it's the same basic thickness. The troughs are going to contact the lower molars, but not the upper molars beforehand, right? True. Whereas in your patented invention, the bulbous area on both sides would come in contact first with both the upper and lower molars. Well, I think it's clearly the lower molar and the lower bicuspid that are relevant here. The upper ones I don't think make any difference. The power position, if you look at the specification, is talking about the position of the lower jaw, keep maintaining it, and locking that TMJ joint into place in the right spot. It's the lower molar and the lower bicuspid that are relevant here. And so I think the way to understand this best is to look at it in terms of are there two discrete points in the cushion pad which make first contact in the key areas so as to lock that jaw in the power position and achieve this dissipation objective of the claim. And I think clearly the wavy line does that. But I also want to make the point to the court that... to do what you also found a clever way to do, but it seems to me not the same way. Well, it is a way within the scope of the claims interpreted according to their ordinary meaning as used in the claim we submit. Right. And it is, I would submit, a trivial difference. And I think the court was correct, particularly at a preliminary injunction stage, when we have an expert from us verifying that a person of ordinary skill in the art would understand this claim in the manner we are arguing and in the manner the district court adopted. And we had nothing from XO on the record to support this thickness construction, which I think is clearly simply not supportable by the specification or any of the claim construction principles of the Federal Circuit. I also think it's helpful... Let me ask this... I want to ask the court a question. With respect to the embedded term, let me spend some time on that, unless the court has other questions... You want to turn the tables on us now, don't you? Yes, in large portions. I won't do that. The district court correctly found, we submit, that the term embedded is a facially clear term, and the ordinary meaning should be... The penny in the wet cement concrete really sunk it home for me. I'm sorry, Your Honor. The penny in the wet concrete. Right. I think that's... Need not be completely internal. It can simply be partially. There are a lot of configurations that can accomplish embedding, an integration of one material into another in a secure fashion. There's no need for it to be internal. And I think the court hit the nail on the head with regard to the phrase embedded or substantially internal in the specification. The fact that it could mean one thing or another simply demonstrates that that is not the kind of a clear and precise definition that this court has found sufficient to deem the patentee to have acted as its own lexicographer and redefined the term. My clever law clerk just informed me the penny in the wet concrete example was his. I thought I had remembered it from your brief. So that was how he described embedded. He said embedded, you know, like if you put a penny in wet concrete, it's embedded, but it's not necessarily entirely internal. So maybe you can use that I was going to use a telephone pole, but I like the penny better. Okay. Mr. Roberts, your opponent didn't get to talk about the scope of the injunction, but is there anything else that you want to tell? We used up his time, and we'll invite Mr. Chin if there's something he wishes to say about it. Certainly, certainly, Your Honor. I'd be happy to address that. I think that the scope of the injunction here is reasonable, and I think that what the district court did was tailor the language of the injunction to the evidence that was before it. And specifically, there was evidence of a bait-and-switch type tactic or plan in place here on the part of EXO. What happened was EXO, you'll recall there are two products of EXO at issue in this case. There's their first generation product, which I think the pictures and the evidence shows is essentially a direct copy of our commercial embodiment, the GelMax product. With respect to that first product, EXO has never contested infringement, either below or now on appeal. And so we think it's clear, regardless of what happens on this appeal, the injunction with regard to that first product must stay in place. There's no dispute that it does infringe, and there's been no contest to the validity of this patent at this point. So that injunction can stay in place. And what happened is when we brought this action, EXO, while it was showing people its original design, was working on a redesign. And months later it came out with the redesign, and what it was doing was using the infringing device to show and demonstrate and generate interest in their products, and then plan to ship something else. And this is what the Court was addressing in that injunction, and we think that's an entirely appropriate exercise of the Court's discretion in terms of the exact language of an injunction to prohibit that kind of evasion switch. Let me just ask you about this. Demonstrating seems to me to be using, and that's clearly barred by 271, if that's what's going on. Taking orders would be offering for sale or selling. Distributing literature about, hmm, you mean making an offer for sale or just distributing a pamphlet with pictures? I'm not sure that that necessarily qualifies, for example, as an act of infringement. Discussing the accused devices, well, that kind of freaked me out because the First Amendment seems to me to create a little problem for a court to enjoin even someone from having a conversation. But, I mean, I think our precedent says if we interpret injunctions in ways... Sorry, if we were to interpret this injunction, for example, as applying only to predicates to an offer for sale, for example, because it seems to me that's what you were asking for and that's what the lower court was going for. I mean, if we were to interpret this injunction as broadly prohibiting a single discussion, that would be crazy. But the discussion relative to a current or potential customer, it seems to me what the court was getting at was the offer for sale. I mean, you're not suggesting that they're enjoined from having conversations about their product, right? No, certainly not internally. Certainly not. The point is... No, no, no. Hold on. What do you mean internally? Because are you suggesting that this injunction prohibits them from having a conversation with anybody, not an offer for sale or a predicate to an offer for sale, but simply a conversation about a product? I wouldn't go that far. If it is in aid of an offer for sale or if it is a part of a conduct of its... Like a predicate to an offer for sale. A predicate or... That would be a problem. ...a part of an attempt to induce others to infringe, that would be a concern, and I think this injunction would fairly prohibit it. But I agree with the court that it needs to be interpreted reasonably. Absolutely. Okay. Any more questions for Mr. Roberts? Any more questions? Okay. We have it in mind. Thank you, Mr. Roberts. Thank you. Mr. Chin. Thank you, Your Honor. Save your rebuttal time. Proceed. I just want to discuss two points. One is with regard to the scope of the patent. I agree with Judge Moore that this is overly broad, particularly with regard to the distributing literature and discussing the accused devices. Our clients work that way. They create designs. They show their salesmen. They show their customers and say, how do you like this? And sometimes it's not even the entire design. It's particular features. Do you like this portion here? Is this good? And they're always looking for the cool-looking, the more hip-looking design. I mean, the wavy portion, to be quite honest, they did it because it looked cool. They put fangs on the device because it looked cool, and they're always doing that. Fangs? Fangs. They create a little inlay here that looks like fangs, or theoretically looks like fangs. I have an 8-year-old who played football this year. I'm going to look much more closely at these mouth guards, hearing out. Okay. But in that regard, that is essentially how they do it. They fine-tune the designs by talking to people. The injunction that's been issued is overly broad. They cannot even talk about what they've done in the past, and they're a little afraid of what they're doing because the injunction is so broad. So with regard to that, I believe that it's no doubt that it's overly broad and should be vacated for that reason. Well, but the opposing counsel just suggested that his understanding of the injunction is that the discussion factor applied to predicates to an offer for sale. You can't discuss it in an attempt to solicit a sale. You're right. And that, it seems to me, would be fair game for the district court to enjoin you from doing. I mean, just having a casual conversation with somebody wouldn't fall within that, and it seems if you interpret the injunction that way, and that's the way he suggests it should be interpreted, then there is no problem with it. You're right, but it does not say that. It also includes offer for sales, and we understand that if we were to talk with somebody and say, would you like to buy this design, we would be in violation of the injunction, but that's not what it says. It says discussing, and again, we're going to take a wide berth because of that. The injunction, it's in place, and we have to be careful about that. But right now, they're stymied in creating designs, and they have to make sure that it's way afield, and they can't even discuss prior these designs with their customers and see what aspects they like and which they should try and salvage for the next iteration of the Moth Guard. One other point the opposing counsel made was that the injunction should stay in place to go through the original design. The original design, as it is, was a very temporary design, and again, they're constantly tooling the design. So consequently, that design was never argued in the district court case because the new design was the one that was proposed to go forward. But we suggest that if this court views that any of the claim structures are incorrect, the preliminary injunction cannot stand with regard to any of the designs because it was predicated on incorrect claim construction. And the last point I just want to bring up with regard to the embedded portion, if the court understands the embedded simply means to be integral, it would be overly broad. For example, if you were to take the harder framework and wrap it around the entire EVA, theoretically, that would be integral with the EVA material, but the teeth would never contact the EVA material, and consequently, there would be no customization there. That's the reason why the plain ordinary meaning of embedded also encompasses something being inside. The concept of the penny being in the cement, the penny is inside the cement when you drop it in there. It's embodied. If you look at the surface of it, the penny does go inside the cement. That's what I meant to talk about the example that Judge Moore had used. And I think I'm out of my time. It is indeed. Thank you, Mr. Chairman. Mr. Roberts, the case is taken under submission. Thank you, Your Honor.